IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| ELIJAH MANUEL, #R49737, | ) |
| Plaintiff, | ) |
| -vs- | ) No. 15-783-SMY-RJD |
| ZACHARY ROECKEMAN, C/O NALLEY, and CINDY MILLER, | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Now Come Defendants, CINDY MILLER and NICK NALLEY, by and through their attorney, LISA MADIGAN, Attorney General of the State of Illinois, and pursuant to Federal Rule of Civil Procedure 56, hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment stating as follows:

## BACKGROUND

Plaintiff, Elijah Manuel, was incarcerated at Big Muddy River Correctional Center ("Big Muddy') at all times relevant to this suit. [Doc. 1 and 34]. On July 21, 2015, Plaintiff filed the instant complaint pursuant to 42 U.S.C. § 1983. [Doc. 1]. Following Merit Review, the Court found Plaintiff stated a First Amendment retaliation claim against Defendants Miller and Nalley. [Doc. 8]. On June 28, 2016, Plaintiff, through counsel, amended his complaint. [Doc. 34]. Plaintiff's amended complaint states a First Amendment retaliation claim, through the Fourteenth Amendment, against Defendants Miller and Nalley. [Doc. 34].

Defendants Nalley and Miller are entitled to summary judgment on Plaintiff's First and Fourteenth Amendment retaliation claims as Plaintiff lacks evidence of a causal connection

between the actions alleged by Defendants and his First Amendment activity, he cannot rely solely on timing to support his retaliation claim, even if the First Amendment activity was a motivating factor the shakedown of Plaintiff's cell would have occurred anyway, and the refusal is not sufficient to deter plaintiff from pursuing his First Amendment activity of filing lawsuits. Additionally, Defendants are entitled to qualified immunity. For these reasons, Defendants now move for summary judgment.

**UNDISPUTED MATERIAL FACTS**

1. On April 24, 2015, Plaintiff met with Ms. Miller and had no issues. [Defs' Ex. G, Bates 262].

2. On June 12, 2015, a shakedown record was filed out by Ms. Markel, with Ms. Char Rosa as a witness. The shakedown record indicates that an inmate "gave this reporting employee petition papers he received from inmate Manuel, Elijah #R49737." [Defs' Ex. C, Bates 268]. The shakedown slip indicates that an incident report regarding the matter was completed. [Defs' Ex. C, Bates 268].

3. On June 12, 2015, Ms. Markel completed an incident report noting that an inmate provided her with petition papers he had received from inmate Manuel, Elijah and that the inmate was approached by inmate Manuel to fill out the petition. [Defs' Ex. C, Bates 269].

4. On June 22, 2015, Plaintiff and Ms. Miller met in 4 house regarding the letters he was sending her. [Defs' Ex. G, Bates 262]. Plaintiff demanded that Ms. Miller had not answered his grievances within 14 days. *Id*. Ms. Miller spoke with Plaintiff, at which time Plaintiff seemed to be disrespectful of Ms. Miller's response and walked off. *Id*.

5. On June 22, 2015, Plaintiff's cell was shaken down. [Defs' Ex. C, Bates 324].

6. The shakedown of Plaintiff's cell yielded: "1 handwritten letter describing trading & trafficking such as 'I really appreciate you for working with me bro. In this enveloped I put 4.00 dollars to start knocking down the $24.00 dollars. Man bro I wish that I could've move

more of the items that you gave me.', 2-handwritten letters describing an incident involving Manuel being assaulted 1 signed by [redaction] and 1 signed by [redaction], both [redaction] and [redaction] signed a statement (DOC 08000) denying that they wrote the letters. R/O reports that both admitted that Manuel had approached them wanting to sign a statement for a lawsuit he (Manuel) was filing against the state which they both refused. R/O reports also finding 2 typed letters addressed to United States District Court (Elijah Manuel vs. Zachary Roeckeman), 1 of the letters represented Cabell and the other represented [redaction] both [redaction] and [redaction] signed a statement (DOC0800) denying typing the letters or having any knowledge of the typed letters. Also found in Manuel's cell was 1 cassette tape with the I/M [redaction] on it. [Defs' Ex. D, Bates 252].

7. On July 7, 2015, Plaintiff was served with a disciplinary ticket regarding the June 22, 2015 shakedown. [Defs' Ex. E, Bates 254].

8. On July 13, 2015, the Adjustment Committee heard the ticket and found Plaintiff guilty of 204 Forgery, 308 Contraband/Unauthorized Property, and 309 Petitions, Postings, and Business Ventures. Plaintiff was disciplined with 3 months C Grade, 3 months segregation, revoke GCC or SGT 1 months, Transfer (disciplinary), 3 months commissary restriction, and 3 months gym/yard restriction. [Defs' Ex. E, Bates. 252-253].

9. Following June 22, 2015, Plaintiff submitted a request slip to Ms. Miller inquiring on the status of his grievance. [Defs' Ex. A, Pg. 47].

10. Following the June 22, 2015 shakedown, Plaintiff submitted a grievance against Mr. Nalley regarding the events that had taken place on June 22, 2015. [Defs' Ex. A, Pg. 48-49].

11. Since June 22, 2015, Plaintiff has utilized the grievance process and filed grievances relating to the June 22, 2015 incident. [Defs' Ex. H, Pg. 14-16, 227-228].

**ARGUMENT**

I.   **Plaintiff Did Not Suffer Retaliation For His Pursuit of First Amendment Activity.**

An official who takes action in retaliation for a detainee's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Although it is easy to state a retaliation claim, the burden of proving the claim is heavy. *Babcock*, 102 F.3d at 275.

"To prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future," *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); and (3) the First Amendment activity was the reason or but-for cause that a defendant decided to act, *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012); *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2350 (2009); *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009); *cf. Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013) (plaintiff has burden of proving retaliation motivating factor in conduct and burden shifts to defendants to show more likely than not action would have taken place absent retaliatory motive). "Prisons may prohibit inmates from soliciting other prisons to unite in an unauthorized cause." Harris v. Walls, 7th Cir. No. 14-2569, March 20, 2015 (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977); *Pilgrim v. Luther*, 571 F. 3d 201, 205 (2d Cir. 2009)).

   **A. Plaintiff lacks evidence of a causal connection between the actions alleged by Defendants and his First Amendment Activity.**

"As in any § 1983 action, the plaintiff must establish the state of mind required to prove the underlying violation. . . . In a First Amendment retaliation claim, as [ ] alleged here, the plaintiff must prove that his speech was the reason that the [defendants] decided to act." *Waters*, 580 F.3d at 584 (internal quotations omitted). At the summary judgment stage, a plaintiff has the

burden of producing evidence that his speech was at least a motivating factor to a defendant's retaliatory action, and the burden then shifts to the defendant to rebut any causal inference raised by Plaintiff's evidence. *See e.g., Mays*, 719 F.3d at 634; *Kidwell*, 679 F.3d at 965.

Plaintiff fails to establish any causal connection between the First Amendment activity and the alleged conduct of the Defendants. Plaintiff generally claims that on June 22, 2015, following a conversation with his counselor, Ms. Miller, Mr. Nalley shook down his cell as retaliation for the three grievances he had submitted to Ms. Miller; yet Plaintiff fails to provide evidentiary support for his retaliation claim. [Defs' Ex. A, Pg. 53; Ex. B, Interrogatory Response 1, 2, 7, 11]. A prison administrator's role in responding to inmate grievances or complaints does not constitute "personal involvement" in the alleged constitutional deprivation that gave rise to the grievance. Even the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause"). The three grievances in question did not pertain to Mr. Nalley or Ms. Miller. [Defs' Ex. A, Pg. 16, 17, 19, 20-21]. Moreover, Plaintiff's CHAMPS records reflect that on April 24, 2015, Plaintiff met with Ms. Miller and had no issues. [Defs' Ex. G, Bates 262]. On June 22, 2015, the records indicate that Plaintiff and Ms. Miller met in 4 house regarding the letters he was sending her. *Id*. Plaintiff demanded that Ms. Miller had not answered his grievances within 14 days. *Id*. Ms. Miller spoke with Plaintiff, at which time Plaintiff seemed to be disrespectful of Ms. Miller's response and walked off. *Id*. Further, Ms. Miller responded to Plaintiff's letters by placing the responses on the same document he wrote those letters on and

the letters were returned to Plaintiff, as is the usual process. [Defs' Ex. I, Defs' Interrogatory Response 4]. While Plaintiff failed to follow the proper procedure by not sending the letters on Offender Request Slip forms, but on blank pieces of paper, the letters were nevertheless responded to and returned to Plaintiff. *Id*.

Plaintiff's theory of retaliation is convoluted. On June 12, 2015, a shakedown record was filed out by Ms. Markel, with Ms. Char Rosa as a witness. [Defs' Ex. C, Bates 268]. The shakedown record indicates that an inmate "gave this reporting employee petition papers he received from inmate Manuel, Elijah #R49737." [Defs' Ex. C, Bates 268]. The shakedown slip indicates that an incident report regarding the matter was completed. [Defs' Ex. C, Bates 268]. The incident report, also dated June 12, 2015, notes that an inmate provided Ms. Markel with petition papers he had received from inmate Manuel, Elijah and that the inmate was approached by inmate Manuel to fill out the petition. [Defs' Ex. C, Bates 269].

Following the June 12, 2015, shakedown record and incident report, on June 22, 2015, Plaintiff's cell was shaken down. [Defs' Ex. C, Bates 324]. The shakedown of Plaintiff's cell yielded the items detailed in U.M.F. 6. [Defs' Ex. D, Bates 252]. On July 7, 2015, Plaintiff was served with a disciplinary ticket regarding the June 22, 2015 shakedown. [Defs' Ex. E, Bates 254]. The ticket indicates that Plaintiff was placed in Temporary Confinement. [Defs' Ex. E, Bates 254]. On July 13, 2015, the Adjustment Committee heard the ticket and found Plaintiff guilty of 204 Forgery, 308 Contraband/Unauthorized Property, and 309 Petitions, Postings, and Business Ventures. Plaintiff was disciplined with 3 months C Grade, 3 months segregation, revoke GCC or SGT 1 months, Transfer (disciplinary), 3 months commissary restriction, and 3 months gym/yard restriction. [Defs' Ex. E. Bates 252-253].

Further, a correspondence by an inmate indicates that inmate Manuel had "asked if I'd be willing to give account of what occurred but he and I both was very much aware that I had no factual basis of what had transpired nor had the staff. However he requested briefly if I would say that they did and didn't take the proper measures. He told me that he would give me all the documents needed for me to sign and to give it some thoughts. A few weeks later another family [redacted] spoke on how Mr. Manuel had approached him asking if he too would be willing to commit this act also."[Defs' Ex. F, Bates 256]. As such, Plaintiff cannot demonstrate a causal connection between the shakedown of his cell and the filing of his three grievances.

### B. Plaintiff cannot rely solely on timing to support his retaliation claim.

Plaintiff alleges generally that he suffered retaliation as a result of the three grievances he had submitted to Ms. Miller. [Defs' Ex. A, Pg. 53; Ex. B, Interrogatory Response 1, 2, 7, 11]. Plaintiff's retaliation claim is based on the fact that on June 22, 2015, Plaintiff spoke with Ms. Miller regarding the grievances he had submitted and a few hours later Mr. Nalley shook down Plaintiff's cell and Plaintiff was placed on investigative status. [Defs' Ex. A, Pg. 53]. On July 6, 2015, Plaintiff received an Offender Disciplinary Report pertaining to the shakedown of Plaintiff's cell. [Defs' Ex. E. Bates 254]. In some instances, a "chronology of events" may support an inference of retaliation. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *Harris v. Fleming*, 839 F.2d 1232, 1238 (7th Cir. 1988); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). However, a sequence of events is not sufficient standing alone; there must be evidence that ties it to protected First Amendment activity. *See Lieberman v. Budz*, 2009 WL 1437609 at *15 (N.D. Ill. 2009) ("Plaintiff must do more than show that he engaged in protected activity and that he was later adversely treated. He 'must present something by which a jury could connect the dots between' the protected activity and the adverse treatment to demonstrate retaliation.") And, the First Amendment activity must be sufficiently close in proximity to the

alleged action to support retaliation. *Kidwell*, 679 F.3d at 966-67 ("the time period between the protected activity and the adverse action must be 'very close' . . . we typically allow no more than a few days to elapse between the protected activity and the adverse action").

The timing here does not support a claim of retaliation. Plaintiff's first grievance to Ms. Miller was submitted on May 22, 2015. [Defs' Ex. B, Interrogatory Response 1, Pg. 3-4]. On May 29, 2015, Plaintiff submitted a second grievance to Ms. Miller. *Id.* Plaintiff asserts he submitted a third grievance but does not provide a date for it. *Id.* As discussed in the preceding section, on June 12, 2015, a shakedown record was filled out by Ms. Markel, with Ms. Char Rosa as a witness, indicating that an inmate "gave this reporting employee petition papers he received from inmate Manuel, Elijah #R49737." [Defs' Ex. C, Bates 268]. On June 12, 2015, Ms. Markel also completed an incident report noting that an inmate had provided her with petition papers he had received from inmate Manuel, Elijah and that the inmate was approached by inmate Manuel to fill out the petition. [Defs' Ex. C, Bates 269]. Following the June 12, 2015, shakedown record and incident report, on June 22, 2015, Plaintiff's cell was shaken down. [Defs' Ex. C, Bates 324]. On July 7, 2015, Plaintiff was served with a disciplinary ticket regarding the June 22, 2015 shakedown. [Defs' Ex. E, Bates 254]. On July 13, 2015, the Adjustment Committee heard the ticket and found Plaintiff guilty. [Defs' Ex. E. Bates 252-253].

The shakedown of Plaintiff's cell occurred on June 22, 2015, a month after he had submitted his first grievance and after a shakedown slip and incident report had been filled out by Ms. Markel providing evidence that Plaintiff was engaged in prohibited activity. Further, following an investigation, Plaintiff was served an offender disciplinary report on July 7, 2015. [Defs' Ex. E, Bates 254]. On July 13, 2015, the Adjustment Committee heard the ticket and found Plaintiff guilty. [Defs' Ex. E. Bates 252-253]. There is not a sufficient temporal

relationship to support Plaintiff's claim of retaliation. To the extent Plaintiff claims that the June 22, 2015 shakedown of his cell was in retaliation for the three grievances he had submitted to Ms. Miller, neither Ms. Miller nor Mr. Nalley were named in those grievances. [Defs' Ex. A, Pg. 16, 17, 19, 20-21]. As such, there is less of a causal relationship and Plaintiff lacks any evidence to tie everything together.

### C. Even if Plaintiff could show that his First Amendment activity was a motivating factor behind the shakedown of Plaintiff's cell, the shakedown would have occurred anyway.

If a plaintiff can meet his initial burden with respect to a retaliation claim, the burden then shifts to a defendant to rebut any causal inference. *See e.g., Mays*, 719 F.3d at 634; *Kidwell*, 679 F.3d at 965. "[T]he ultimate question is whether events would have transpired differently absent the retaliatory motive." *Babcock*, 102 F.3d at 275. "A prisoner who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason." *Harris v. Walls*, 604 Fed.Appx. 518, 521 (7th Cir. 2015) citing *Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011). "The improper motive would have done no work, had no effect, left the world unchanged." *Id*. Plaintiff generally claims that on June 22, 2015, following a conversation with Ms. Miller, Mr. Nalley shook down his cell for retaliatory reasons. [Defs' Ex. A, Pg. 53; Ex. B, Interrogatory Response 1, 2, 7, 11]. Plaintiff argues the shakedown and subsequent placement on investigative status and discipline were based on the three grievances he had submitted to his counselor, Ms. Miller. [Defs' Ex. B, Interrogatory Response 1, 2, 7, 11]. Although Defendants dispute Plaintiff's ability to provide a sufficient causal connection and Defendants' involvement in any alleged retaliatory conduct, it is clear that Plaintiff's cell would have been shaken down regardless of any retaliatory motive.

On June 12, 2015, a shakedown record was filed out by Ms. Markel, with Ms. Char Rosa as a witness. [Defs' Ex. C, Bates 268]. The shakedown record indicates that an inmate "gave this reporting employee petition papers he received from inmate Manuel, Elijah #R49737." [Defs' Ex. C, Bates 268]. The shakedown slip indicates that an incident report regarding the matter was completed. [Defs' Ex. C, Bates 268]. The incident report, also dated June 12, 2015, notes that an inmate provided Ms. Markel with petition papers he had received from inmate Manuel and that he was approached by inmate Manuel to fill out the petition. [Defs' Ex. C, Bates 269].

Following the June 12, 2015, shakedown record and incident report, on June 22, 2015, Plaintiff's cell was shaken down. [Defs' Ex. C, Bates 324]. The shakedown of Plaintiff's cell yielded the items detailed in U.M.F. 6. [Defs' Ex. D, Bates 252]. On July 7, 2015, Plaintiff was served with a disciplinary ticket regarding the June 22, 2015 shakedown. [Defs' Ex. E, Bates 254]. On July 13, 2015, the Adjustment Committee heard the ticket and found Plaintiff guilty of 204 Forgery, 308 Contraband/Unauthorized Property, and 309 Petitions, Postings, and Business Ventures. Plaintiff was disciplined with 3 months C Grade, 3 months segregation, revoke GCC or SGT 1 months, Transfer (disciplinary), 3 months commissary restriction, and 3 months gym/yard restriction. [Defs' Ex. E, Bates 252-253].

Furthermore, a correspondence by an inmate indicates that inmate Manuel had "asked if I'd be willing to give account of what occurred but he and I both was very much aware that I had no factual basis of what had transpired nor had the staff. However he requested briefly if I would say that they did and didn't take the proper measures. He told me that he would give me all the documents needed for me to sign and to give it some thoughts. A few weeks later another family [redacted] spoke on how Mr. Manuel had approached him asking if he too would be willing to commit this act also."[Defs' Ex. F, Bates 256]. As such, regardless of whether Plaintiff can make

the initial showing required, it is clear that Plaintiff's cell would have been shaken down per the June 12, 2015, shakedown slip and incident report.

### D. Plaintiff cannot prove that the shakedown of his cell deterred him from pursuing his First Amendment activity of filing lawsuits.

An additional factor that has been considered is whether the individual alleging retaliation in fact continued exercising his First Amendment rights. In *Antoine*, the Seventh Circuit noted that the defendants' alleged actions had not "dissuaded him from continuing to file grievances; . . . every time a guard made a statement that he deemed racist or threatening, he filed a fresh grievance against that guard. He has not been silenced . . . ." *Antoine*, 275 F. App'x at 541. Here, Plaintiff admits that following the June 22, 2015 shakedown, he submitted a request slip to Ms. Miller inquiring on the status of his grievance. [Defs' Ex. A, Pg. 47]. Additionally, following the June 22, 2015 shakedown, Plaintiff submitted a grievance against Mr. Nalley regarding the events that had taken place on June 22, 2015. [Defs' Ex. A, Pg. 48-49]. Subsequent to June 22, 2015, Plaintiff has filed additional grievances as well as the instant lawsuit. [Defs' Ex. H, Pg. Bates 14-16, 227-228].

As Defendants' alleged actions against Plaintiff do not constitute actions that would deter a person of ordinary firmness from exercising his First Amendment rights, and Plaintiff has been able to, and indeed continued to exercise his First Amendment rights, Plaintiff's retaliation claim fails and Defendants are entitled to summary judgment.

## II. Defendants Are Entitled to Qualified Immunity

Qualified immunity is a defense available to state and federal officials to provide protection when they are required to exercise their discretion. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Qualified immunity is an issue for the court, not for the jury. *Maltby v. Winston*, 36 F.3d 548 (7th Cir. 1994). "Qualified immunity shields government officials from civil damages

liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 132 S.Ct. 2088, 2093(2012)).

The right at issue must be established, "not as a general proposition," but rather, in a particularized sense so that the contours of the right are clear to a reasonable official. *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015). The right must be defined with relation to the specific facts confronting the defendant. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). A right is "clearly established" only if it is defined so clearly and its contours are sufficiently clear that a reasonable official would know that what he is doing violates that right. *Carroll v. Carmen*, 135 S.Ct. 348, 350 (2014), *Dibble*, 793 F.3d at 808. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Carroll*, 135 S.Ct. at 350 (quoting *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2083 (2011)).

The United States Supreme Court has suggested that the right at issue must be clearly established at the national level by either Supreme Court precedent or, possibly, by a "'robust consensus of persuasive authority' in the Courts of Appeals." *Taylor*, 135 S.Ct. at 2044. The Court did, however, "assume for the sake of argument" precedent from a circuit court decision, despite disagreement among the circuits. *Id.* at 2045; see also *Carroll*, 135 S.Ct. at 350. Neither an unpublished appellate opinion, nor a district court decision, can clearly establish the law. *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995).

The Court must ask two questions: first, whether the allegations, taken in the light most favorable to the plaintiff, establish a constitutional or statutory right and, second, whether the right was clearly established at the time of the alleged violation. *Dibble*, 793 F.3d at 807. The

Court has discretion to decide the case based on the second question without addressing the first. *Id.*

"For qualified immunity to be surrendered, preexisting law must dictate, that is truly compel, . . . the conclusion for every like-situated, reasonable government agent that what he is doing violates federal law in the circumstances." *Khuans v. School District 10*, 123 F.3d 1010, 1020–21 (7th Cir. 1997*), quoting Lassiter v. Alabama A & M University*, 28 F.3d 1146 (11th Cir. 1994). "[I]t is not the simple existence of analogous case law that defeats the claim of qualified immunity; rather, these decisions must demonstrate that, at the time the defendants acted, it was certain that their conduct violated the law." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 620 (7th Cir. 2002).

Because Plaintiff is unable to establish a constitutional violation, Defendants are entitled to qualified immunity based on the first prong of the applicable analysis. If, however, the Court were to look to the second prong of the analysis, Defendants are protected by qualified immunity, as Courts have ruled that where prison officials discipline an inmate for legitimate reasons, prison officials have not violated the constitution by retaliating against the inmate.

The instant case is extremely similar to *Harris v. Walls*, 604 Fed.Appx. 518, (7th Cir. 2015). In *Harris*, the Court affirmed summary judgment in favor of prison officials as "the undisputed evidence compels the conclusion that prison officials disciplined Harris for legitimate reasons regardless of any protected speech." *Id*. at 519. In *Harris*, prison officials investigated the inmate for violations of prison rules. *Id*. The investigation yielded that an "unidentified inmate had written a letter to a correctional officer asserting that Harris was trying to get a 'load of people' to 'jump on a soy food lawsuit' by writing down symptoms for them to complain about. *Id.* Prison officials also "received reports from four confidential informants that Harris

was encouraging inmates to lie about the effect of prison food on their health. In particular, the informants said, Harris had distributed a letter detailing how to complain about the soy diet, typed grievances for inmates, instructed them on what medical relief to demand from health care to support their grievances, and told one informant that soy was causing the informant's stomach pain." *Id*. 519-520. Inmate Harris was charged with giving false information to employees, operating a business venture, and soliciting or conspiring with others to violate prison rules. *Id*. at 520. Following a hearing, the adjustment committee found Harris guilty and he was disciplined with three months of segregation, three months of lost telephone and commissary privileges, revocation of three months of good conduct credit, and a disciplinary transfer. *Id*.

The Seventh Circuit has held that where a "prisoner who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason." *Harris v. Walls*, 604 Fed.Appx. 518, 521 (7th Cir. 2015). The Court observed that the prison officials "genuinely and undisputedly believed that Harris had solicited inmates to unite in his fight against the prison's soy diet by filing grievances without regard to their truth, lied about it, and should be punished for it," and cited as evidence the prison rules, the evidence regarding the violation of the rules, and the circulated letters. *Harris v. Walls*, 604 Fed.Appx. 518, 521 (7th Cir. 2015), citing *Van den Bosch v. Raemisch*, 658 F. 3d 778, 788 (7th Cir. 2011). The Court observed, "the validity of his discipline does not depend on the falsity of the other grievances; it depends on the sincerity of the defendants' belief that he improperly solicited inmates and lied to investigators about it." *Id*. at 522. The Seventh Circuit thus affirmed the grant for summary judgment in favor of the defendants as prison officials disciplined the inmate for legitimate reasons.

In the present case, as outlined in the preceding sections, on June 12, 2015, a shakedown record was filed out by Ms. Markel, with Ms. Char Rosa as a witness. [Defs' Ex. C, Bates 268]. The shakedown record indicates that an inmate "gave this reporting employee petition papers he received from inmate Manuel, Elijah #R49737." [Defs' Ex. C, Bates 268]. On June 12, 2015, Ms. Markel completed an incident report noting that an inmate provided her with petition papers he had received from inmate Manuel, Elijah and that the inmate was approached by inmate Manuel to fill out the petition. [Defs' Ex. C, Bates 269]. On June 22, 2015, Plaintiff's cell was shaken down. [Defs' Ex. C, Bates 324]. The shakedown of Plaintiff's cell yielded the items detailed in U.M.F. 6. [Defs' Ex. D, Bates 252]. Consequently, on July 7, 2015, Plaintiff was served with a disciplinary ticket regarding the June 22, 2015 shakedown. [Defs' Ex. E, Bates 254]. On July 13, 2015, the Adjustment Committee heard the ticket and found Plaintiff guilty of 204 Forgery, 308 Contraband/Unauthorized Property, and 309 Petitions, Postings, and Business Ventures. Plaintiff was disciplined with 3 months C Grade, 3 months segregation, revoke GCC or SGT 1 months, Transfer (disciplinary), 3 months commissary restriction, and 3 months gym/yard restriction. [Defs' Ex. E, Bates 252-253].

The evidence shows that there was a legitimate reason for shaking down Plaintiff's cell, irrespective of the First Amendment activity. Further, it is clear that prison officials genuinely, sincerely, and undisputedly believed inmate Manuel was violating prison rules. Here, like *Harris*, there was an investigation into the matter, and inmate Manuel was issued a disciplinary report as well as a hearing on the matter, wherein it was held that he was guilty and disciplined.

As outlined above, a plaintiff has the burden of establishing three elements related to retaliation. If this burden is not met, a correctional employee cannot be subjected to liability for otherwise legitimate actions. Plaintiff cannot meet his burden here. To hold the Defendants liable

for retaliation based on the facts involved in this case would be a new formulation of the law; one which entitles the Defendants to qualified immunity.

## CONCLUSION

Defendants are entitled to summary judgment as Plaintiff lacks evidence of a causal connection between the actions alleged by Defendants and his First Amendment activity, he cannot rely solely on timing to support his retaliation claim, even if the First Amendment activity was a motivating factor the shakedown of Plaintiff's cell would have occurred anyway, and the shakedown is not sufficient to deter plaintiff from pursuing his First Amendment activity of filing lawsuits. Additionally, Defendants are entitled to qualified immunity.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this honorable Court enter summary judgment in their favor and provide such further relief as this Court deems necessary and proper.

    Respectfully submitted,

    NICK NALLEY and CINDY MILLER,

        Defendants,

    LISA MADIGAN, Attorney General,
    State of Illinois,

        Attorney for Defendants,

By:   s/ Ayesha Patel
       Ayesha Patel, #6318055
       Assistant Attorney General
       500 South Second Street
       Springfield, Illinois 62701
       (217) 785-4555 Phone
       (217) 782-8767 Fax
       E-Mail: apatel@atg.state.il.us

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| ELIJAH MANUEL, #R49737, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 15-783-SMY-RJD |
| | ) | |
| ZACHARY ROECKEMAN, | ) | |
| C/O NALLEY, and CINDY MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2017, I electronically filed the foregoing *Defendants' Memorandum in Support of their Motion for Summary Judgment*, with the Clerk of Court using the CM/ECF system, which will send electronic notice of same to the following:

Lindsay A. Dibler     ldibler@kbslf.com
Justin A. Reinhardt     jreinhardt@kurowskishultz.com
Richard M. Roessler     rroessler@boylebrasher.com

            By:   s/ Ayesha Patel
                Ayesha Patel, #6318055
                Assistant Attorney General
                500 South Second Street
                Springfield, Illinois 62701
                (217) 785-4555 Phone
                (217) 782-8767 Fax
                E-Mail: apatel@atg.state.il.us